The fourth case for argument is United States v. Thomas Drum. Good morning to the court. My colleague and counterpart, Mr. Quinn. Good morning. May j&j on behalf of the United States. Today, your honors, the United States is appealing a district court order granting a new trial following a jury's verdict on two counts of abuse of sexual contact and aggravated sexual abuse of a child. We believe that the district court erred in its conclusion in granting a new trial for multiple reasons, any of which we believe merit reversal, reinstatement of the jury's verdict, and remand for sentencing. I'll give you a very brief procedural background following the jury's verdict. Motions were filed, post-litigation ensued. Defendant Drum filed his motion renewing his motion for judgment of acquittal and, alternatively, for a new trial. We, in a timely manner, responded to that motion for new trial and the judgment of acquittal. The sole reason in Mr. Drum's motion related to the sufficiency of the evidence. The motion largely dealt with, entirely dealt with, element one in each count of the charging document relating to sexual act or sexual contact, respectively, 2246-2D and 2246-3. The entirety of the insufficiency argument related to that element alone. Nothing else was in dispute. Nothing else was offered. As it related to count one, Mr. Drum's motion sparsely addressed the facts, giving rise to its insufficiency claim, arguing primarily that the, quote, unquote, touching requirement had not been satisfied. It then launched into where things got messy at the trial about an incident that took place in a bedroom. The majority of the motion dealt with the facts that were elicited from the victim, JLK, during the incident in the bedroom, virtually disregarding the facts of her testimony that took place in the bathroom. Can I ask you, you've mentioned both count one and count two, but I wonder if they're different in a very important way, which is count one, which is all the district court really focused on in the new trial order, really didn't focus on count two except for on sufficiency of the evidence. But count one, as I understand it, requires the genitalia. It's what the district court was concerned about, the inserting an object or whatever into the genitalia. But the other one, count two, only requires sexual contact, which is intentional touching, either directly or through clothing, including the groin. And so literally everything the district court said about granting a new trial does not apply to count two at all. And so I'm wondering if we should differentiate here and say count two is easy. Count two should not have been granted a new trial. Count one, on the other hand, maybe there is a reason why we have to take it seriously, because the district court's reasons all go to count one. Agreed in part. Count two related not only to the — the district court spent a great deal of time, as in Mr. Drum's motion, dealing with conduct that took place in a bedroom. The conduct in the bathroom satisfied count one and count two. Agreed. And that was a misinterpretation. I think the court thought that count two was a separate act. It dealt with — it dealt with the bedroom. And it turns out that it was actually charged in also the bathroom. So the testimony giving — that took place in the bathroom from JLK at page 21 through 24 of the jury trial transcript talked about force — forcing himself on her, both of whom were naked, Mr. Drum and the JLK, touched, page 22, using his hands and fingers, 23 and 24, 28 through 29, on her private — these are quotes — private, down there, and vagina. Well, and there's no question, then, that he touched the groin. Now, there's a question as to whether he was able, you know, to — to have a — to penetrate her with his penis. But I think there's no question that he touched the groin. Your Honor, that's another point of error that we raise in our appeal to this Court, is that there was penetration that — penetration was not necessary. The district court spent a great deal of time talking about the lack of touching and anatomic specificity, applying an incorrect legal standard under Plenty Arrows. It admitted on the trial record that Plenty Arrows was inapplicable. If you look at the language of 22462D, it's a touching, not through the clothing of the genitalia. We had JLK stating specifically that he used his hand and attempted to insert his penis in her vagina. And her — the expert testimony offered by Dr. Jones confirms that the vagina is the genitalia. Even more so, Counsel — Outside of the vagina would be genitalia as well? Yes. And I think that's what the district court was concerned about. And that was the — that was the subject of much cross regarding the — the genitalia. But again, remember, both counts in the indictment, and specifically Count 1, charged not only engaging in a sexual act but attempt to do so. The attempt, whether it's outside or inside of the vagina, I think it — the vagina, generally speaking, and as Dr. Jones testified and what JLK testified to, support the evidence as it relates to Count 1. Whether it's a completed act or not, it was definitely an attempt. Is Count 2 a lesser-included offense of Count 1? There is some mention of it in the transcript that it was. And I'm just curious, not being that familiar, are they different crimes, or they — is one a lesser — They're separate crimes. Okay. Separate crimes. They allege the same range of dates. The dates captured the victim's seventh — seventh year, right? So she was seven-year-old — seven-year-old — seven years old, excuse me, at the time of the offense conduct. The incidents that gave rise in the bathroom support both counts, and they support the jury's verdict. Going back to the procedural and some of the — the facts that were alleged or not alleged in the post-trial motion for new trial, very little was given to Count 1. I think I just addressed those facts relating to Count 1. In the judgment for order of acquittal, it then incorporated in whole, in its motion under Rule 33 for a new trial, everything that it said earlier in the pleading, addressing nothing. It said insufficient evidence, and the only mention of the word wait, which is, I think, an important distinction here, was made when — when Mr. Drumm cited one of the court's cases, I think it was Campos, and in a parenthetical mentioned the word wait. Nothing was mentioned in his motion. This is all to go to say that we then responded in — in kind, and no reply was filed. About a month after our reply, or just over a month, the court then, following the pre-sentence report filing by the Probation Office, the district court then granted a new trial. Over a month later, no reply being filed on Mr. Drumm addressing any of the issues that we raised regarding sufficiency and the two motions under Rule 29 and Rule 33. I was just going to say, I wonder, though, whether that's permissible. The rule says, at least as to incorporating some other things that weren't argued, interests of justice so require, so stick with me. He — he raises the insufficiency of the evidence, and so looking at things like the jury instruction, as to the points with regard to the insufficiency evidence, the insertion, the genitalia, the penetrating, all that stuff, whether or not that's just part of the same overall argument, that he says, look, the evidence wasn't exactly overwhelming here, this — he being the district judge. And then you add all the other things that were — that happened at trial, and I'm very concerned that the jury was perhaps misled or reached a verdict they should not have. It doesn't seem to me to be wild. It's one thing to make up a completely new thing. It's another thing to look at other aspects of the trial on the things that are raised by the defendant. Okay. So all of the reasons that were cited in the district court order were not raised by the defendant specifically. The leading questions issue was, in my opinion, I think on the border, you could say it went to a sufficiency, but during the relevant portion of J.L. Kaye's testimony, there were no objections regarding her testimony in a significant portion of pages 21 through 24. There were, at instances, objections regarding leading questions, but as it relates to the term vagina and touching and hands, no objections, and those terms were introduced by her. That issue was not raised. The lack of specificity — the lack of specificity, as I just cited J.L. Kaye's testimony, she talked specifically about her vagina. Dr. Jones' testimony supported her statements with regard to vagina being genitalia. Dr. Jones wasn't even addressed. I go — I know that that goes to sufficiency, certainly. It goes to count — the first element of each count. But the district court applied an incorrect legal standard. If you read that jury trial transcript, he specifically states penetration is not necessary. Penetration is under 2246-2A. 2A was not charged. 2D was. He then wholeheartedly, the district court wholeheartedly applies plenty of arrows, which is not applicable, and avoids this court's decision in Kemo-Littleburg, which dealt specifically with 2246-2D. So addressing these facts, he applies the incorrect legal standard. He then talks about interviews. The interviews were admitted properly under federal rule of evidence 801-D-2A. They're admissions by a party opponent. The foundation was laid. No objections were made to those interviews. None. The record bears that out. His statements, he was identified by the other participants in the conversations. There were multiple interviews that took place. There was a section of an audio that was admitted. No objections to that being admitted, which is Exhibit 20. No mention was ever made of a polygraph. None whatsoever. Any mention of the word polygraph took place well outside the presence of the jury, and the record bears that out. There was no motions to suppress those statements. They came in cleanly through the testifying agents that were participants to those interviews. On the polygraph point, didn't the district court come out the opposite way or at least criticize the fact that the polygraph wasn't mentioned? In other words, that he had responded mm-hmm to incriminating questions, and the district court thought if you don't know the context that it happened in a polygraph, maybe I'm wrong about this, but this is how I read it. If you don't know the context that this happened in a polygraph, obviously he was trying, you know, to answer the questions truthfully, et cetera, so the context made a difference. Again, maybe I'm wrong about that, but that's how I read what the district court was saying. There are two different sections of this interview contextually broken in time and in space, and so he's been confronted directly with these things. He doesn't deny them. He doesn't No objection made to Exhibit 11. He's confronted with these allegations. So Exhibit 11 with no objection, laid in proper foundation, admissible by a party opponent, admission by a party opponent. That is, in large part, the basis for jury instruction number nine, which is another point of error that the district court raised on its own, which has nothing to do with sufficiency, not raised by the defendant. So he was aware. I'm sorry. Go ahead, Jess. And also, wasn't he able to get in his subsequent denials as well? Absolutely. That's another thing. He was interviewed on multiple occasions. His denials, despite being hearsay, were admitted. He avoided having to take the stand, if that's his defense. It's his right not to testify. I fully understand that. Well, it's not necessarily his right to get his denials in without testifying either. And they did. They came in on multiple occasions through multiple witnesses in our case. So these admissions, these audios are part and parcel of just about every trial that is before the United States district courts when that evidence exists. What we did was proper. It was under the rules of evidence and should be admitted as circumstantial proof that corroborated JLK's statements. Do you want to reserve some time? Oh, my gosh. Yes, please. Very well. Thank you. I didn't see that. I didn't see the light. Thank you, Your Honor. Morning, Ms. Quinn. Morning. May it please the Court. My name is Molly Quinn, and I represent the ability Thomas Drum. We're asking the Court to affirm the order granting a new trial. The district court acted within its broad discretion in finding that a new trial was warranted in this case. And I'll start where most of the discussion with Mr. Jangary involved. The district court did not abuse its discretion in granting a new trial for the reasons set forth in the order. The district court's reasons went to the weight of the evidence and, therefore, fall under the grounds raised in the motion. And the district court's reasons fall into two main categories. They relate to the alleged victim's testimony, and they relate to Drum's alleged admissions or treatment of admissions by the United States. And these go to, I guess, the heart of the weight of the evidence. And I think even the jury instruction issue, this is a jury instruction that tells the jury how it can treat certain types of evidence that relate to the defendant's, pardon me, alleged admissions. It's not the same as a jury instruction that comes up in other cases that is about maybe the elements of the offense or something separate from these two things that go to really the heart of the weight of the evidence in a case, which is the alleged victim's allegations and testimony and did the defendant admit to it. Can you just address, I don't see any analysis of count two by the district court at all in the new trial section. He does in the earlier sufficiency of the evidence. Right. And then when you go to that statute, I don't see where any of the reasons why he granted a new trial would apply to count two. So I'm at a complete loss as to why we wouldn't say it's not an abusive discretion about count two. Count one, different issues. I think a couple answers to that. I think it starts with the confusion that arose over what was the evidence being offered for count two. And I think you just mentioned that right before that in the district court's order at length that what the district court perceived the evidence offered as to count two. I think he used, I don't know, the evidence there was, to be sure, weak, contradictory, and confusing. And I think it's a fair reading of the order to read part two of the order as including things that the district court had previously said in part one. Isn't that another sort of error, though, that would make it abusive discretion? If the district court thought it relied only on the bedroom incident and the prosecution had presented it as both, both the bedroom incident and the bathroom, and the jury could have bought that. And so not, so the district court's misapprehension would seem to be a problem for upholding the new trial on count two. I don't think it's an abusive discretion in this case because I don't think it was that clear what evidence the government was relying on for the two different counts. There is, you mentioned there's a discussion at some point of the district court kind of saying, this might be a lesser included offense as to count one, I'm not sure. The government didn't specify, I believe, either an opening or closing specifically what evidence went to count two. I think it was clear the government was relying on the incident, the alleged incident in the bathtub certainly as to count one. But the references were more general in terms of count two. And so I think that leads to the district court framing this in a certain way. And I don't think that it makes it an abusive discretion to fail to repeat that in the new trial portion. And to get to your other point, or your question about can we affirm as to count one and reverse as to count two, I think it goes back to the same thing, that the district court, reading the order as a whole, the district court, as it perceived the evidence, found problems relating to JLK's the weak, contradictory, and confusing, that would infuse both counts regardless of what evidence was being admitted. Is that true when it seems to be, where the thing that seems to be absolutely beyond reproach is that she testified that he touched her vagina. Now, whether it's the outside or the inside, that seems, and that would seem to, just on its plain language, satisfy, no matter how you read, the statute on count two would seem to satisfy it. I guess we disagree that you would take the evidence in the light most favorable to what she said, that the district court does not have to do that on a motion for a new trial. And that the district court didn't do that here. That there are problems with her credibility overall that come out through her testimony and through the competing versions that she gave of what happened, both in the bathtub and in the bedroom. Did that? So, talking about JLK's allegations and her testimony, the district court was troubled by the testimony, and he referred to it as count one. Explained that her, any specificity with which she talked about where she was allegedly touched came in through leading testimony. I think it's important to keep in mind that the district court has broad discretion in controlling leading testimony. And in the moment he allowed it in, but then upon reflection, we have the benefit of the district court, knowing what the district court thinks about what evidence came in, because he said it. He said, I think that I'm troubled by the way these allegations came in through leading testimony. That a lot of what she said only came in through being leading. And I think... That's some leading testimony with a child sex victim, isn't it? It is. And two things... And wasn't the court just flat out wrong when it said that the government introduced the term vagina before her? No, I disagree. I think, again, if you read the order as a whole, it's clear that the district court knew that JLK was the first person who used that word. But it was through prompting, through the questioning by the government of, you know, where did he touch you? She said, or where did he try to touch you? She said, my private. The question was, what do you call your private? And then she said down there. And then the question was, do you know what the formal word is for your private? And then she said vagina. And so she says the word, but only upon a couple of different questions from the United States. And I think there are a couple of times where the district court knew that, and the language in the order makes that clear. It just seems quite normal. I don't understand why that would be troublesome to the district court to have the government go a little bit further and try to get her to identify it more clearly. But I think that this is a situation where, like the court always does, the district court was there in the room and has broad discretion regulating these matters. And in this case, upon reflection and upon being in the courtroom and then reading the transcript and ruling on the motion for a new trial. It was sort of like, I don't like the discretion. I exercised at trial, so I'll give a new one. Maybe. What about the sentence, when Congress says there shall be a mandatory minimum? Is that a proper consideration in the granting of a new trial? No, we're not arguing that it is. But the standard is whether the district court gave significant weight to an improper factor. And I don't think that he gave significant weight to that. It's two sentences at the end of the order. It is a passing reference. The district court knew that mandatory minimum. It came up at the end of trial when there was the conversation about whether Mr. Drum would be allowed to, or would be taken into custody immediately, or would be allowed to self-report after a period. There was also commentary on the record that the district court knew about that mandatory minimum at that time. And I'm sure he did before. He's very familiar with that statute. So I kind of want to take a step back and talk about the ways that the verdict here was against the weight of the evidence, all of which can be reasons that this Court can affirm. The district court, in trial, twice stated that the alleged victim's testimony was all over the map. It said that in ruling on both of the motions for judgmental acquittal. It said, sure, there's enough evidence, and I'm going to send it to the jury, but we'll see what the jury does. So it's clear in the trial that the district court, being in that courtroom, already thinks the alleged victim's testimony is, as he said, all over the map, and that there might be concerns with the verdict should the jury return a guilty verdict. And I think the bedroom evidence, even if the government doesn't need that to sustain a conviction on count two, I still think that her testimony as to what happened in the bedroom or what didn't happen or what she said before and what she said at trial, that all of that does go to her credibility, which, again, the district court can weigh and can reevaluate on the motion for new trial based on the weight of the evidence. And she gave unreliable testimony about the alleged touching in the bedroom, specifically in relation to, most fundamentally, was Mr. Drum even there? She said, he touched me with his hands, the barest reading of her testimony, but then she said he wasn't in the bed. She didn't know if she got woken up, or she didn't remember if she got woken up to somebody touching her, and she doesn't know, she thinks, that any touching or any contact with Mr. Drum caused the bleeding. And there was also a discrepancy in the amount of blood that she said was there. When she first reported the incident, she said a small amount in her underwear. At trial, she said there's blood all over the bed. And these are things that, if we were here on sufficiency review, this court would have to ignore, but they are things that go to her overall credibility that would support the district court's finding that this verdict was against the weight of the evidence. And I think, like I said, even if the government doesn't need the bedroom to support both counts here, it does cast light on her entire credibility. And I wanted to pick up on a point with the leading questions. The district court found some significance between the outside of the vagina, and I think if you look at that part of the district court's order, the district court never said that this conviction requires penetration. That does not appear in the district court's order. The district court knew the elements, stated them, again, in Part 1, the Rule 29 portion, and at no point thought that there had to be penetration of either the genital opening or of the vulva. But the district court did note that she had previously said in the forensic interview, as it came in through the pediatrician, that any touching was on the outside. But then at trial, she said he touched her vagina, and, of course, the vagina does not include the outside. And I think that that goes to not just what happened, but also to her credibility. And the district court could consider that in granting a new trial. But we're talking about, again, a minor victim. And so I wonder, I mean, first of all, she wanted to call her privates, and then they had to get her to say the formal word for it. I just wonder whether that kind of nitpicking is – I mean, maybe it's what the district court should have done, but that seems to me to be very, very, very nitpicky. Sure.  And not inconsistent. I mean, there's a way to read those two statements as perfectly consistent with each other. Right. But, again, on this standard, we don't have to go with the version most favorable to the verdict. And I think that's what the district court is doing here. The district court, on the motion for a new trial, gets to and did go through this entire trial very carefully and consider, do I believe this witness? And then I want to talk a little bit about Mr. Drum's alleged omissions. He did not admit to committing a sexual act or sexual contact against the alleged victim. He explicitly denied the allegations many times in the first interview, which would have been, like, in December of 2021, and then in the first portion of what ended up being a polygraph examination, the second interview in March of 2022. And it's only after explicitly denying that he touched her vagina or committed sexual misconduct against her that he's being accused over and over and over again, being told, it's absolutely clear to me you did this. It's absolutely clear. It's absolutely clear. And he just says, mm-hmm, mm-hmm, mm-hmm, to every single thing that that interrogator said, including stories, you know, made-up stories about a friend who did a touching when he was in a bad place to the allegations here. Was he still on the polygraph at that point, or was he, had they removed all the paraphernalia that goes along with the polygraph? My understanding is that that was what we call post-polygraph. They had removed that. I think that the district court made this inference as well and was concerned that the jury would make that inference from the very beginning of the recorded audio and then the written transcript. It says, looking at that, it's absolutely clear to me that you did touch her vagina. And the looking at that, I think that we know in context is referring to the polygraph. And the government highlighted Mr. Drum's responses in closing argument, emphasized that final instruction, number nine, repeatedly referred to it in rebuttal as the law of the case. And I think the district court properly looked at the role of this instruction and how it highlighted certain portions of that interview. Over and above what was already highlighted, the district court had previously expressed concern about why the FBI didn't use to record interrogations. And then he asks in front of the jury, why is only part of this recording being offered? And the parties appropriately say, we're not going to talk about that in front of the jury. We would need to approach. But the district court was concerned that the jury's verdict was based on kind of a discrepancy in how the different versions of what Mr. Drum said came in. That when he explicitly denied the allegations, that only comes in on cross-examination through testimony. But the jury gets to hear a recording of when the interrogator explicitly accuses him, and he just says, mm-hmm, mm-hmm, mm-hmm, to every single thing the interrogator said. But the denials actually did come in without him even having to take the stand, right? They did, yes. But the district court's point was they came in through testimony alone, but then the jury gets to hear this recording and then supplemented by this instruction. And then on hindsight, the district court says, I really shouldn't have given that. Wasn't there something, and maybe I'm misremembering, but wasn't there something where one of the witnesses testified, oh, he might just have been acknowledging what I said, not agreeing with what I said? Something along those lines. Yes. Agent Whitman did say, I interpret that as acknowledging what I heard, which is one element to the evidentiary issue of when silence can be considered an adoptive admission. But he did later on say, and he didn't deny it. And then the agent agreed with that. And I think one last point before I sit down, the district court was concerned about his own diction and the way that he pronounced, mm-hmm, when overruling the defense's objection to that portion of the government's closing argument. I think that's something that this court really needs to defer to the district court on, that one of the very last things the jury heard was the district court repeating, mm-hmm, in a way that may have sounded more affirmative or as an assent more than it actually was on the recording. Because the district court did not abuse its broad discretion, we would ask that the court affirm the order granting a new trial as to both counts. Thank you. Thank you. I see you have a minute, nine. Make the most of it. Will do. Pages 22 and 23 specifically cover, how did that make you feel? Kind of weird. What happened next? He tried to touch me. Where did he try to touch you? My private. What do you call your private? Down there. Okay, do you know what the formal word is for your private? Vagina. That's all her testimony. There's no dispute. That's on the record. The district court extrapolated findings in its order that just did not exist. Now, there is a discrepancy I had to ask this question about the word try coming up two different times. The word try comes up, he tried to put it in, and then she says, no, I got out before he tried. And reading those two things against each other does look like a discrepancy. She said that his penis, his erect penis, was under her vagina when she was in the tub. I'm sorry to be, I'm not trying to be curt, I'm just trying to jump through all these hoops real quick.  I appreciate the commentary. The jury instructions, a number two in preliminary instructions, number 20 in the final instructions instructed the jury don't consider anything I said. They were considered that, told that at the very beginning of the trial and the very end of the trial. Anything based on what the court said is speculative. The jury returned a verdict not knowing what the penalty was, but the district court did, and it made note before granting its order in the last page of its order coupled with commentary about the polygraph. So certainly, after you say, after he says I consider all of these things, that's part of its order, it's completely improper. The jury was likewise instructed that it was improper. And I'd ask you to reverse, reinstate the jury verdict and remand for sentencing. I don't believe the court complied with Rule 33. Judge Greger, could I ask? I'm going to ask my try question again. I'm going to try again, which is, he said, or she said, excuse me, he tried to put it in, and then she said, I believe you asked, and I don't have it sitting right in front of me, was he able to do so? I mean, I'm paraphrasing. No, I got out before he tried. Now, to me, it's probably over-reading what happened, but it is a contradiction right on its plain language, and I just want to get, what you gave me was not sufficient, so I want to give you a chance to respond. But let's assume that all of that is just true. Yeah. It still satisfies the attempts language in 2241C, 2244, 2246-2A-D, excuse me, 2262-D, the charges of which he was convicted by the jury. He attempted to put in his erect penis. We have to prove arousal and gratification, and that intent associated with these counts, and that was the proof giving rise to that, and then her statements right there in there, naked, alone, in the tub, and he was successful in touching her vagina, and he was trying to insert his penis into her, and she got out of the tub. The removal of the children, all of those things give rise to an attempt alone. So I hope that addresses your question, Your Honor. Thank you, Judge Strauss, for that. Thank you. Thank you to both counsel for your appearance and argument. The case is submitted. And that completes our argument calendar for the day. The court will be in recess until 9 a.m. tomorrow morning.